UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE ANTONIO RAMOS,           : CIVIL NO: 1:10-CV-01533
                              :
          Plaintiff           :
                              : (Judge Rambo)
     v.                       :
                              : (Magistrate Judge Smyser)
JEFFREY A. BEARD, *et al.*,    :
                              :
          Defendants          :

## REPORT AND RECOMMENDATION

I. Background and Procedural History.

On July 23, 2010, the plaintiff, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint.

By an Order dated August 2, 2010, we reviewed the complaint pursuant to 28 U.S.C. § 1915A and concluded that the complaint fails to state a claim upon which relief may be granted. We ordered that the plaintiff may file an amended complaint on or before August 30, 2010.

On August 23, 2010, the plaintiff filed an amended complaint.

The amended complaint names as defendants Jeffrey A. Beard, the Secretary of the Pennsylvania Department of Corrections, and the following officials and officers at the State Correctional Institution at Dallas (SCI-Dallas): Michael Klopotoski, the former Superintendent; Benjamin Barsh, a counselor; Lieutenant David Mosier; Corrections Officer Robert McCoy; Corrections Officer Wilk; Corrections Officer Walters; Corrections Officer Hogan; and Charles McKeown, a hearing examiner.

The plaintiff alleges the following in his amended complaint.

Defendant McCoy conducted a campaign of mental torture against the plaintiff. On January 20, 2009, defendant McCoy said in a loud voice that he was going to make sure that the plaintiff was never released from the Restricted Housing Unit (RHU). Defendant McCoy also called the plaintiff a derogatory name and a child murderer. Defendant McCoy on numerous occasions falsely accused the plaintiff of murdering a child in New York City. On March 25, 2009, defendant McCoy loudly stated that he hoped that the plaintiff's cellmate would stab the plaintiff in the throat.

On numerous occasions, defendants McCoy, Hogan, Wilk and Walters denied the plaintiff showers. On numerous occasions, defendant McCoy also denied the plaintiff food trays or tampered with the plaintiff's food trays. Defendants Walters and Wilk also made threats to the plaintiff and accused the plaintiff of murdering a child. On one occasion, defendant Walters refused to allow the plaintiff to turn in his sheets and pillow case to be laundered and the plaintiff had to use dirty sheets for a week. Also on one occasion, defendant Wilk refused to issue the plaintiff toilet paper or soap.

The plaintiff sent a number of requests to defendant Klopotoski about the denial of showers and food trays, about defendant McCoy accusing the plaintiff of a crime and about threats of death made by defendant McCoy. Defendant Klopotoski refused to answer the plaintiff's requests and refused to investigate the plaintiff's allegations.

After the plaintiff sent his first request to defendant Klopotoski, defendants McCoy and Hogan began retaliating against the plaintiff. Defendants McCoy and Hogan issued the

plaintiff numerous misconducts. Defendant McKeown conducted hearings on those misconducts. During those hearings, corrections officers from the RHU would sit at the same table as defendant McKeown and would make remarks and gestures as defendant McKeown conducted a sham hearing. Defendant McKeown found the plaintiff guilty of the misconducts on the basis of hearsay written reports. Defendant McKeown sanctioned the plaintiff with disciplinary custody time in the RHU. The sanctions ranged from 30 days to 120 days of disciplinary custody time.

On September 30, 2009, defendant Beard visited the RHU and the plaintiff informed him that he was being denied showers and food trays. Defendant Beard was fully made aware of defendant McCoy's conduct. Although defendant Beard could have prevented the conduct of defendants McCoy, Hogan, Wilk and Walters, he ignored the plaintiff's pleas. Defendant Beard made no attempt to investigate the plaintiff's allegations and he did not refer the plaintiff's allegations to the Office of Professional Responsibility.

On November 5, 2009, the plaintiff was moved to a cell with Inmate Serrano. From November 5, 2009 until December 9, 2009, the plaintiff was constantly harassed by inmates in the Latin Kings gang who were housed near him. These inmates encouraged Inmate Serrano to beat up the plaintiff. Inmate Serrano refused.

Inmate Serrano was scheduled to be released from the RHU on December 8, 2009, and, on December 8, 2009, the plaintiff submitted a request to defendant Barsh regarding the threats by the Latin Kings. The plaintiff received no response from defendant Barsh.

On December 8, 2009, Inmate Serrano was released from the RHU and Inmate Colon was housed in the cell with the plaintiff. The Latin Kings encouraged Inmate Colon to beat up the plaintiff. The plaintiff requested that the guards move him to another cell. The guards refused and told the plaintiff to submit a request to defendant Mosier.

On December 9, 2009, Inmate Colon assaulted the plaintiff. The plaintiff suffered a bloody nose and the optic

nerve of his right eye was damaged. After the assault, the plaintiff was taken to the medical department. At the medical department he was given treatment for his bloody nose but he was not given treatment for his eye. The defendants have not given the plaintiff any treatment for his eye. The damage to the plaintiff's optic nerve has led to the early stages of glaucoma and the formation of a cataract in the plaintiff's right eye. The plaintiff suffers from cloudy vision in his right eye.

On December 10, 2009, the plaintiff was moved to a single cell in the RHU. Defendant Mosier deliberately withheld the plaintiff's property and legal papers.

On March 11, 2010, defendant Walters handcuffed the plaintiff for a shower. The handcuffs were so tight that they caused the plaintiff pain and left deep indentations on the plaintiff's wrists. The plaintiff showed defendant Barsh the indentations. The plaintiff also attempted to show a nurse the indentations but defendant Mosier would not allow the nurse to examine the plaintiff's wrists. Defendant Mosier viewed the

plaintiff's wrists.  Defendant Mosier became angry with the plaintiff and left the plaintiff's cell.

On January 31, 2010, the plaintiff submitted a grievance complaining that he was not receiving the books that he requested from the library.  That grievance was denied, but on appeal the grievance was remanded to defendant Mosier. Defendant Mosier subsequently claimed that the plaintiff had made false statements and he threatened to place the plaintiff on grievance restriction.

On March 4, 2010, defendants Mosier issued the plaintiff a misconduct accusing him of lying to an employee. Defendant McKeown conducted a hearing on the misconduct, found the plaintiff guilty and sanctioned him with 180 days loss of leisure library privileges.

Defendant Mosier ignored that the plaintiff was being systematically denied showers and food trays.  Also defendant Mosier did not interview the plaintiff's cellmate regarding a grievance that the plaintiff submitted in November of 2009.

As relief the plaintiff is seeking compensatory and punitive damages as well as injunctive relief.

II.  Review of Amended Complaint.

We review the amended complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**.- The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal**.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

A. Pleading Standards.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v.*

*Iqbal,* 129 S.Ct. 1937, 1949 (2009). The statement required by
Rule 8(a)(2) need only give the defendant fair notice of what
the plaintiff's claim is and the grounds upon which it rests.
*Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual
allegations are not required. *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007). However, more is required than
labels, conclusions and a formulaic recitation of the elements
of a cause of action. *Id.* "In other words, a complaint must do
more than allege the plaintiff's entitlement to relief." *Fowler
v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A
complaint has to "show" such an entitlement with its facts."
*Id.* "While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations."
*Ashcroft, supra,* 129 S.Ct. at 1950. "When there are well-
pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise to
an entitlement to relief." *Id.*

        "[A] complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting
*Twombly*, *supra*, 550 U.S. at 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

B. Discussion.

This is a 42 U.S.C. § 1983 action. 42 U.S.C. §1983 provides, in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other
> person within the jurisdiction thereof to
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and
> laws, shall be liable to the party injured in

> an action at law, suit in equity, or other
> proper proceeding for redress . . . .

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* "To state a claim under § 1983, a plaintiff 'must allege both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)(quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).

We conclude that the amended complaint states Eighth Amendment conditions of confinement claims upon which relief may be granted against defendants McCoy, Hogan, Wilk, Walters, Klopotoski, Beard and Mosier, an Eighth Amendment failure-to-protect claim upon which relief may be granted against defendant Barsh and retaliation claims upon which relief may be

11

granted against defendants McCoy, Hogan and McKeown.[1]  The amended complaint, however, fails to state any other claims upon which relief may be granted.  More specifically, the amended complaint fails to state a due process claim upon which relief may be granted against defendant McKeown based on the conduct of disciplinary hearings, a due process property claim upon which relief may be granted against defendant Mosier, an Eighth Amendment use of force claim upon which relief may be granted against defendant Walters based on using tight handcuffs, an Eighth Amendment medical claim upon which relief may be granted against any of the defendants or any claim upon which relief may be granted against defendant Mosier based on his handling of the plaintiff's grievances.

1. Due Process Claim against Defendant McKeown.

The plaintiff claims that defendant McKeown denied him due process in connection with misconduct hearings.

---

1.  By a separate Order, we have ordered that these defendants be served with the amended complaint.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." A due process claim requires a two part analysis. First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when state prison regulations can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84.

In *Sandin*, the inmate was sentenced to thirty days of disciplinary confinement in the Special Holding Unit.  As a result of the prisoner's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains)." *Id*. at 494 (Breyer, J. dissenting).  The Court concluded that the inmate's thirty days in the Special Holding Unit did not impose the type of atypical significant deprivation in which the state may conceivably create a liberty interest. *Id.* at 486.  The Court noted that disciplinary confinement at the prison in question, with only insignificant exceptions, mirrored conditions imposed on inmates in administrative and protective custody; that based on a comparison of inmates inside of and outside of disciplinary segregation, placement in segregation for thirty days did not work a major disruption in his environment; that disciplinary action did not inevitably affect the duration of the inmate's sentence; and that the "regime to which he was subjected was within the range of confinement to be normally expected for one

serving an indeterminate term of 30 years to life." *Id*. at 486-87.

"After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)(quoting *Sandin, supra,* 515 U.S. at 484). In deciding whether a protected liberty interest exists under *Sandin*, we consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003). Whether or not a protected liberty interest exists under *Sandin* requires inquiry into the specific facts of the case. *Id.* at 533.

The plaintiff alleges that defendant McKeown imposed disciplinary sanctions on him. Those sanctions were the imposition of disciplinary custody time ranging from 30 to 120 days and 180 days loss of leisure library privileges. The most serious of those sanctions is the 120 days of disciplinary

custody time.  However, disciplinary custody for 120 days

without more is not an atypical and significant hardship in

relation to the ordinary incidents of prison life. *See Smith v.*

*Mensinger,* 293 F.3d 641, 654 (3d Cir. 2002)(holding that seven

months in disciplinary confinement without more does not

manifest the deprivation of a liberty interest protected by the

Due Process Clause).  The plaintiff has not alleged facts from

which it can reasonably be inferred that he was subjected to

atypical and significant hardships in relation to the ordinary

incidents of prison life such that he had a liberty interest

protected by the Due Process Clause.  Accordingly, the

complaint fails to state a due process claim upon which relief

may be granted against defendant McKeown.


        2. Due Process Claim against Defendant Mosier.


        The plaintiff alleges that, on December 10, 2009, he

was moved to a single cell in the RHU and that defendant Mosier

deliberately withheld his property and legal papers.  We

construe the plaintiff's claim as a claim that he was deprived

of his property without due process of law.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), a state
prisoner claimed that prison officials had negligently deprived
him of his property without due process of law.  The Court
concluded that the alleged loss even though negligently caused
amounted to a deprivation of property under the Fourteenth
Amendment's due process clause. *Id.* at 536-37.  The Court held,
however, that random, unauthorized, negligent deprivations by
state officials of a prisoner's personal property are not
actionable under the due process clause where there exists a
remedy under state law for reimbursement. *Id.* at 541-43.
*Hudson v. Palmer*, 468 U.S. 517 (1984), extended this concept to
include intentional unauthorized deprivations of property.  The
Court in *Hudson* reasoned:

> While *Parratt* is necessarily limited by
> its facts to negligent deprivations of
> property, it is evident . . .  that its
> reasoning applies as well to intentional
> deprivations of property.  The underlying
> rationale of *Parratt* is that when deprivations
> of property are effected through random and
> unauthorized conduct of a state employee,
> predeprivation procedures are simply
> 'impracticable' since the state cannot know
> when the deprivations will occur.  We can
> discern no logical distinction  between
> negligent and intentional deprivations of
> property insofar as the 'practicality' of

> affording predeprivation process is concerned.
> The State can no more anticipate and control
> in advance the random and unauthorized
> intentional conduct of its employees than it
> can anticipate similar negligent conduct.
> Arguably, intentional acts are even more
> difficult to anticipate because one bent on
> intentionally depriving a person of his
> property might well take affirmative steps to
> avoid signaling his intent.

*Id.* at 533.  The Court in *Hudson* held that an unauthorized intentional deprivation of property does not violate the due process clause provided that adequate state post-deprivation remedies are available. *Id.*  "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* (footnote omitted).

*Parratt* was subsequently overruled to the extent that it stated that a mere lack of due care by a state official may deprive an individual of property under the Fourteenth Amendment. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). In *Daniels,* the Court concluded "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing

unintended loss of or injury to life, liberty, or property."
*Id.* at 328.

In the instant case, the plaintiff alleges that
defendant Mosier intentionally withheld his property.  The
plaintiff does not allege that this withholding of property was
pursuant to an established procedure.  Thus, the reasoning of
*Parratt* and *Hudson* are applicable and the question becomes
whether the plaintiff had an adequate postdeprivation remedy
available for the loss of property.  The Pennsylvania
Department of Corrections has implemented a grievance system
governed by Administrative Directive 804.  A grievance program
may provide an adequate post-deprivation remedy. *See Tillman v.
Lebanon County Correctional Facility,* 221 F.3d 410, 422 (3d
Cir. 2000)(stating that "the plaintiff had an adequate
postdeprivation remedy in the grievance program").  Because the
plaintiff had an adequate postdeprivation remedy available to
him, the complaint fails to state a due process property
deprivation claim against defendant Mosier upon which relief
may be granted.

3.  Eighth Amendment Use of Force Claim against
    Defendant Walters.

The plaintiff claims that defendant Walters caused him
pain by tightening his handcuffs.  He alleges that after the
handcuffs were removed he had deep indentations on his wrists
from the handcuffs.

The plaintiff's allegation regarding the tight
handcuffs is construed as an Eighth Amendment excessive force
claim.  When prison officials are accused of using excessive
force in violation of the Eighth Amendment the inquiry "is
whether force was applied in a good-faith effort to maintain or
restore discipline, or maliciously and sadistically to cause
harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The use of
handcuffs is necessary in the prison setting.  An allegation
that a prison officer used tight handcuffs causing the prisoner
pain without more is not enough to state an Eighth Amendment
claim upon which relief may be granted.  Accordingly, we
conclude that the amended complaint fails to state an Eighth
Amendment excessive force claim upon which relief may be
granted against defendant Walters.

4. Eighth Amendment Medical Claims.

The plaintiff alleges that the defendants did not provide him with medical care for his eye after he was assaulted by Inmate Colon.

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order for the plaintiff to state a viable Eighth Amendment medical care claim he must allege that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

A prison official is not deliberately indifferent simply because he or she failed to respond to a prisoner's medical complaints when the prisoner was already being treated by a prison medical provider. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment

scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

The plaintiff has not alleged facts from which it can reasonably be inferred that any of the defendants was deliberately indifferent to his serious medical needs in connection with his alleged eye injury.  The plaintiff has not alleged that he informed any of the named defendants of his injury.  Moreover, the plaintiff was seen by the medical department after the assault and the plaintiff has not alleged facts from which it could be inferred that any of the named defendants had knowledge or a reason to believe that the plaintiff was not being appropriately treated by the medical department.  Accordingly, the amended complaint fails to state an Eighth Amendment medical claim upon which relief may be granted against any of the defendants on the basis of the plaintiff's alleged eye injury.

We construe the amended complaint as attempting to state an Eighth Amendment medical care claim against defendants Barsh and Mosier based on the plaintiff showing those defendants the indentations on his wrists as a result of the alleged tight handcuffs used by defendant Walters.  Although

the plaintiff alleges that he had deep indentations on his wrists, he does not allege that his wrists were cut or otherwise in need of medical attention.  Accordingly, the amended complaint fails to state an Eighth Amendment medical care claim against defendants Barsh and Mosier on the basis of the indentations on the plaintiff's wrists.


        5.  Handling of Grievances by Defendant Mosier.


        The plaintiff claims that defendant Mosier mishandled his grievances.

        The plaintiff alleges that, on January 31, 2010, he submitted a grievance complaining that he was not receiving the books that he requested from the library.  He alleges that that grievance was denied, but on appeal the grievance was remanded to defendant Mosier.  He alleges that defendant Mosier subsequently claimed that the plaintiff had made false statements, threatened to place the plaintiff on grievance restriction and issued the plaintiff a misconduct accusing him of lying to an employee.  The plaintiff also alleges that defendant Mosier did not interview the plaintiff's cellmate

regarding a grievance that the plaintiff submitted in November of 2009.

"It is well-established that inmates do not have a constitutionally protected right to a prison grievance system." *Mitchell v. Dodrill,* 696 F.Supp.2d 454, (M.D.Pa. 2010)(Rambo, J.). Thus, a denial of a grievance does not amount to a violation of a prisoner's constitutional rights. *Id.*

The alleged mishandling by defendant Mosier of the plaintiff's grievances fails to state a claim upon which relief may be granted.

6. Leave to Amend.

Before dismissing a complaint for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3rd Cir. 2002). In the instant case, we already granted the plaintiff leave to file an amended

complaint and the plaintiff filed an amended complaint. Further leave to amend would be futile.

III. Motion for a TRO or Preliminary Injunction.

On August 11, 2010, the plaintiff filed a motion for a temporary restraining order or preliminary injunction and a brief in support of that motion.  The plaintiff is seeking an order that he be transferred from SCI-Dallas to the nearest federal correctional facility.

"A party seeking a preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell,* 598 F.3d 139, 147 (3d Cir. 2010).

The plaintiff has not shown that he has a likelihood of success on the merits.  Moreover, "[i]t is well established that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002).  An inmate does not have a due process right to remain in or be transferred to any particular prison. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  For these reasons, it will be recommended that the plaintiff's motion for temporary restraining order or preliminary injunction be denied.

IV.  Recommendations.


Based on the foregoing, it is recommended that the following claims be dismissed: the due process liberty deprivation claim against defendant McKeown based on the conduct of disciplinary hearings, the due process property deprivation claim against defendant Mosier, the Eighth Amendment use of force claim against defendant Walters based on using tight handcuffs, all Eighth Amendment medical care claims against all of the defendants and the claim against defendant Mosier based on his handling of the plaintiff's grievances.  It is further recommended that the plaintiff's motion (doc. 9) for

temporary restraining order or preliminary injunction be denied
and that the case be remanded to the undersigned for further
proceedings.


                                        _**/s/ J. Andrew Smyser**_
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:   September 10, 2010.